**Jennie CINOCCA, Individually and as Administratrix of the Estate of Edward F. Cinocca, Deceased, Plaintiff,**

v.

**BAXTER LABORATORIES, INC., a Delaware Corporation, et al., Defendants.**

No. 73–238–C.

United States District Court,
E. D. Oklahoma,
Civil Division.

Jan. 15, 1975.

---

See also, 386 F.Supp. 644, 646.

John R. Woodard, III, Tulsa, Okl., Roger A. Keller, Morton Grove, Ill., Wm. S. Hall, Tulsa, Okl., for defendants.

## ORDER

DAUGHERTY, Chief Judge.

Plaintiff alleges that she is the widow of and the Administratrix of the Estate of Edward F. Cinocca, deceased. Edward F. Cinocca allegedly died on December 8, 1971 as a result of the failure of a Mitral Heart Valve Prosthesis which had been implanted in his body in 1968. Said Prosthesis was allegedly manufactured and sold by Surgitool, Inc. (Surgitool). All or substantially all of Surgitool's assets were allegedly acquired by Travenol Laboratories, Inc. (Travenol) in June of 1970.

Travenol has filed herein a Motion for Summary Judgment pursuant to Rule 56, Federal Rules of Civil Procedure. For purposes of the Motion Travenol admits that the above-stated alleged facts are essentially correct. Travenol has attached to its Motion a copy of the Agreement whereby it acquired substantially all of Surgitool's assets. It is Travenol's position that the Agreement shows that Travenol only agreed to assume certain enumerated debts and liabilities of Surgitool; that Plaintiff's claim is not among them and that it has not otherwise become liable for any torts of Surgitool by reason of its purchase of the assets and business of Surgitool.

The Motion is opposed by Plaintiff. Plaintiff contends that the Agreement whereby Travenol acquired Surgitool's assets was a merger or a de facto merger and that Travenol as the surviving corporation is liable for the debts and liabilities of Surgitool. Plaintiff also contends that Travenol both expressly and impliedly assumed the tort liability of Surgitool through the Agreement.

A Motion for Summary Judgment should be granted only if the pleadings and any depositions, answers

Eddie Harper, McAlester, Okl., for plaintiff.

to interrogatories, admissions and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. For purposes of Motion for Summary Judgment the Court may consider any materials which would be admissible at trial. 10 Federal Practice & Procedure, Wright & Miller, Civil Section 2721. As a general rule, documents which are submitted in support of a Motion for Summary Judgment must be authenticated by an affidavit. However, uncertified documents may be considered by the Court if not challenged. 10 Federal Practice & Procedure, Wright & Miller, Civil, Section 2722. The materials submitted by Travenol in support of its Motion are not verified by affidavit. However, as Plaintiff has not objected to this defect and treats the Agreement as the true and correct contract for acquisition of substantially all assets as entered into by Travenol and Surgitool the Court will consider the Agreement for purposes of this Motion. Upon consideration of Travenol's Motion, the Court finds and concludes that the same should be overruled. There exists herein both material issues of fact and complexities in applying the applicable law to the alleged facts which make the development of the underlying facts hereof desirable prior to the application of the relevant rules of law. See 10 Federal Practice & Procedure, Wright & Miller, Civil, Section 2732.

Each of Plaintiff's contentions will be discussed in turn, the issue of merger or de facto merger first.

■ Travenol's contention that a corporation which acquires all or substantially all of another corporation's assets is not necessarily liable for the other corporation's torts is well taken. It is the general rule that when one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts or liabilities of the transferor. However, there are four well recognized exceptions to this general rule. There are exceptions where: (1) the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently to escape such liabilities or debts. *West Texas Refining & D. Co. v. Commissioner of Int. Rev.,* 68 F.2d 77 (Tenth Cir. 1933); *Kloberdanz v. Joy Manufacturing Company,* 288 F. Supp. 817 (D.Colo.1968); Fletcher Cyclopedia Corporations, Perm.Ed., 7122.

■ In construing the Agreement, it cannot be said that as a matter of law it does not amount to a merger. A merger is defined as the absorption of one corporation by another, which retains its name and corporate identity with the added capital, franchises and powers of the merged corporation. It is the uniting of two corporations by the transfer of property to one of them, which continues in existence, the other being merged therein. Fletcher Cyclopedia Corporations, Perm.Ed., 7041. The surviving corporation assumes the liabilities, both ex contractu and ex delicto, of the merged corporation. 19 CJS Corporations 1630(a). Whether an agreement provides for a simple sale of assets or a merger is determined by the substance of the agreement and not by the title put on it by the parties. This determination is primarily a matter of contract interpretation. Fletcher Cyclopedia Corporations, Perm.Ed., 7044; 19 AmJur 2d Corporations, 1493.

The Agreement under consideration appears to have been designed primarily to take advantage of the tax free exchange of stock for assets which is allowed by

26 U.S.C. § 368(a)(1)(C).[1] It is stated in the first paragraph of the Agreement to be the desire of the parties that Travenol acquire substantially all of the assets of Surgitool solely in exchange for shares of Baxter common stock (Travenol is a wholly-owned subsidiary of Baxter). The clear gist of the Agreement is that Travenol would acquire all assets of and all incidents of the business of Surgitool and carry that business on. The Agreement calls for the distribution of the shares of Baxter stock received by Surgitool to the shareholders of Surgitool and the dissolution of Surgitool. It is expressed to be the intent of the parties that the Agreement constitutes a "Plan of Reorganization" as that term is defined in § 354(a) of the Internal Revenue Code, and the exchange of stock for assets therein agreed upon constitute a "reorganization" as that term is defined in § 368(a)(1)(C) of the Code. It is further stated to be a condition precedent to the obligations of Surgitool that there be no change in the Internal Revenue Code, published regulations, rulings, or case law which would adversely affect the tax consequences of the exchange of assets for stock provided for by the Agreement.

■■ Most of the essential elements of a merger seem to be provided for by the Agreement. Therefore, it becomes a question of fact as to whether the Agreement provides for a sale or a merger. One factor which indicates that the transaction might be a merger is 26 CFR 1.368–2(a) which is promulgated in conjunction with 26 U.S.C. § 368. The regulation reads in part as follows:

"The application of the term 'reorganization' is to be strictly limited to the specific transactions set forth in section 368(a). The term does not embrace the mere purchase by one corporation of the properties of another corporation, for it imports a continuity of interest on the part of the transferor or its shareholders in the properties transferred. . . . . ."

In light of this regulation, it is difficult to understand how the transaction delineated by the Agreement can be a mere sale of assets for purposes of a transfer of liability for obligations and at the same time a tax exempt exchange under 26 U.S.C. § 368(a) which cannot be a mere purchase of assets. Also, transactions wherein a corporation acquires substantially all of the assets of another corporation solely in exchange for shares of stock in the acquiring corporation are especially suspect as being mergers and not sales.

"It is necessary to distinguish cases where one corporation transfers all its assets for a fair and adequate consideration to another company, from cases where one corporation purchases all the assets of another with its own stock. . . . It is sometimes held that where there is a transfer of the assets of one company to another for shares of stock in the transferee company, at least where such shares of stock are distributed among the stockholders of the transferor company, there is a consolidation . . . but . . . . that it is a misuse of terms . . . since . . . the most all

1. 26 U.S.C. § 368(a)(1)(C) provides:
 "§ 368.
 (a) Reorganization.
 (1) In general. For purposes of parts I and II and this part, the term 'reorganization' means—
 * * * * *
 (C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of substantially all of the properties of another corporation, but in determining whether the exchange is solely for stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded;"

that is accomplished is a 'merger' . . . However, it is of little moment, so far as the effect of the transaction on the rights of holders of claims against the transferor company is concerned, what the transaction is called, since the courts generally hold that such a transfer makes the transferee company liable on the obligations, whether arising ex contractu or ex delicto, of the transferor company, at least to the extent of the property acquired. . . ." Fletcher Cyclopedia Corporations, Perm.Ed. § 7127 In light of the above stated rules of law, it cannot be held that, as a matter of law, the Agreement under consideration amounts to a sale and not a merger. The Motion for Summary Judgment should be overruled with regard to the issue of merger.

The issues of express and implied assumption of liability will be discussed next.

 While disputes involving the interpretation of clear and unambiguous contracts are appropriate cases for summary judgment, *Parish v. Howard,* 459 F.2d 616 (Eighth Cir. 1972), cases involving ambiguous contracts are inappropriate for summary judgment as there are unresolved material issues of fact to be determined by the trier of fact. *Cram v. Sun Insurance Office, Ltd.,* 375 F.2d 670 (Fourth Cir. 1967). A contract is ambiguous when and only when it is reasonably and fairly susceptible of different constructions or meanings. A contract is ambiguous if through vagueness of expression it has a double meaning. 17A C.J.S. Contracts § 294b(2). Plaintiff contends that through the underlined segment in the following quotation from the Agreement, Travenol has assumed Surgitool's liability arising out of Edward F. Cinocca's death. Travenol contends that the qualifying phrases clearly show no express assumption of Surgitool's liability arising out of said liability.

". . . TRAVENOL agrees to assume, pay, perform and discharge all debts, obligations, contracts and liabilities. of SURGITOOL existing on the Closing Date which are disclosed in Exhibit 1 or any other Exhibit hereto or which arose after December 31, 1969 and prior to the Closing Date in the ordinary course of SURGITOOL'S business, provided, however, TRAVENOL shall not (nor shall BAXTER) be responsible for any of the following; i) any claim, liability or expense of SURGITOOL which is covered in whole or in part by the insurance of SURGITOOL; ii) any claim, liability or expense which is based upon or arises out of the purchase or use of a SURGITOOL product (that was sold or otherwise transferred by SURGITOOL on or before the Closing Date) and which is not covered in whole or in part by the insurance of SURGITOOL, except that, TRAVENOL shall assume responsibility for any such claim, liability or expense to the same extent that it would have been covered by the insurance of SURGITOOL referred to in Exhibit 8 attached hereto [2] if the exchange of assets or stock had not occurred, SURGITOOL were still in existence and such insurance were still in effect. . . ."

The above clause of the Agreement is ambiguous and vague. It cannot be said that as a matter of law Travenol did not expressly agree to assume the liability of Surgitool arising out of the use of its products, although the interpretation suggested by Travenol is one to which the clause is fairly susceptible. The Motion for Summary Judgment should also be overruled with regard to the issue of express assumption of liability. With regard to the issue of implied assumption of liability, the arguments advanced by the parties merely reiterate the arguments previously stated with regard to merger and express assumption

---

2. Exhibit 8 indicates that Travenol carried a policy of products liability insurance.

and hence need not be separately considered.[3]

For the above stated reasons Travenol's Motion for Summary Judgment should be overruled.

---

3. *Bouton v. Litton Industries, Inc.*, 423 F.2d 643 (Fifth Cir. 1970) cited by Plaintiff under the category of implied assumption of liability appears in fact to turn on express assumption of liability, 423 F.2d at 652.