[No. 29075-4-I. Division One. May 10, 1993.]

CHINA PRODUCTS NORTH AMERICA, INC., *Appellant,* v.
ERNEST MANEWAL, ET AL, *Respondents.*

---

*David S. Carson* and *Bell & Ingram, P.S.,* for appellant.

*William F. Cronin, Lisa C. Vargo,* and *Bogle & Gates,* for respondents.

FORREST, J. — China Products North America, Inc. (CPNA) appeals the trial court's denial of its motion for summary judgment, contending that as a matter of law, the proposed reincorporation of the Washington corporation, China Products Northwest, Inc., in Delaware is not a merger or share exchange which gives rise to dissenters' rights pursuant to RCW 23B.13.

China Products Northwest, Inc. (CPNW) was organized as a Washington corporation in 1972 by University of Washington graduate students. Over the years, the corporation's operations gradually shifted from Seattle to New York City. In the late 1980's, the corporation severed its Washington banking, accounting and legal relationships, and replaced them with New York services. In 1987, all of CPNW's administrative, financial and trade activities were moved to Jericho, New York, and the Seattle offices were permanently closed.

On June 15, 1990, CPNW sent notices of its annual shareholders' meeting, to be held for the purposes of electing a board of directors, changing the name of the corporation from China Products Northwest, Inc., to China Products North America, Inc., and changing its state of incorporation from Washington to Delaware. The proposals were recom-

mended by the board of directors to reduce confusion with respect to the corporation's name, and to incorporate in a state which would provide the corporation with more flexibility and predictability in its corporate legal affairs.[1] The notice did not describe with particularity how the "reincorporation" would be accomplished.

More than two-thirds of the shareholders approved the proposed changes. Prior to the meeting and vote, respondents, the dissenting shareholders, filed notices of intent to demand payment for the value of their shares, pursuant to RCW 23B.13.210. The respondents thereby preserved dissenters' rights with respect to the proposed reincorporation and name change.

CPNA filed suit seeking a declaratory judgment that the proposed transaction is not an action that gives rise to dissenters' rights. Respondents countersued for declaratory judgment.

On cross motions for summary judgment, the trial judge determined that the proposed reincorporation in Delaware gave rise to dissenters' rights. CPNA appeals from this decision.

The dissenters base their claim on RCW 23B.13.020[2] which confers on stockholders the right to dissent from cer-

---

[1]The proxy statement described the proposed change as: "a change in the Company's state of incorporation from Washington to Delaware pursuant to an Agreement and Plan of Reorganization . . . providing for the reincorporation . . . of the Company, a Washington corporation . . ., as a new Delaware corporation . . . and the simultaneous change of name of the Company. [The new company] will be the *identical corporation* as the [Company] with the same assets and liabilities. Contemporaneously, China Products Northeast, Inc., a New York corporation, which is currently a wholly-owned subsidiary of the Company, will also be merged into [the new company]."

[2]"**23B.13.020 Right to dissent.** (1) A shareholder is entitled to dissent from, and obtain payment of the fair value of the shareholder's shares in the event of, any of the following corporate actions:

"(a) Consummation of a plan of merger to which the corporation is a party (i) if shareholder approval is required for the merger by RCW 23B.11.030, 23B.11.080, or the articles of incorporation and the shareholder is entitled to vote on the merger, or (ii) if the corporation is a subsidiary that is merged with its parent under RCW 23B.11.040;

tain corporate actions and to be paid the fair value of the stock if the corporation proceeds. The statute does not explicitly address the situation where a Washington corporation wishes to change its place of incorporation to another state without any significant change in its business. The dissenters do not assert that the conduct and scope of the business will not remain the same, but rather base their claim on a change in their legal rights under the respective corporation statutes.

There is an almost total dearth of authority in Washington and elsewhere as to the applicability of a dissenters' rights statute to these facts.[3] The dissenters cite *Moore v. Los Lugos Gold Mines*, 172 Wash. 570, 21 P.2d 253 (1933) which in turn relies on *Whicher v. Delaware Mines Corp.*, 52 Idaho 304, 15 P.2d 610 (1932). Both cases were decided in the absence of any dissenters' rights statutes such as we address here. Much more importantly, in each case the net

"(b) Consummation of a plan of share exchange to which the corporation is a party as the corporation whose shares will be acquired, if the shareholder is entitled to vote on the plan;

"(c) Consummation of a sale or exchange of all, or substantially all, of the property of the corporation other than in the usual and regular course of business, if the shareholder is entitled to vote on the sale or exchange, including a sale in dissolution, but not including a sale pursuant to court order or a sale for cash pursuant to a plan by which all or substantially all of the net proceeds of the sale will be distributed to the shareholders within one year after the date of sale;

"(d) An amendment of the articles of incorporation that materially reduces the number of shares owned by the shareholder to a fraction of a share if the fractional share so created is to be acquired for cash under RCW 23B.06.040; or

"(e) Any corporate action taken pursuant to a shareholder vote to the extent the articles of incorporation, bylaws, or a resolution of the board of directors provides that voting or nonvoting shareholders are entitled to dissent and obtain payment for their shares." RCW 23B.13.020(1).

[3]We do not find CPNA's contention that because the Internal Revenue Service (IRS) would treat this as an "F" reorganization and a nontaxable event the transaction should not trigger dissenters' rights. There is simply no legal or logical connection between the taxability of a reorganization for federal income tax purposes and protection of minority stockholders against oppressive action by the majority, which is the purpose of dissenters' rights statutes. Indeed, some consolidations and mergers that the IRS would treat as nontaxable events would clearly trigger dissenters' rights.

result of the disputed transaction would have been to leave the dissenters with assessable stock where they had previously held nonassessable stock. This is plainly a significant and negative change in the nature of the dissenters' interest in the corporation. No such change is involved here. Accordingly, the cases cited by the dissenters furnish no guidance.[4]

The Legislature clearly had the authority to mandate that a change of corporate domicile either would or would not trigger dissenters' rights. The Legislature not having explicitly resolved this issue either way, we resort to the usual guidelines of statutory construction to ascertain the legislative intent.

■ One of the oldest and most succinct statements in ascertaining legislative intent is found in *Heydon's Case*, 3 Co. Rep. 7a, 76 Eng. Rep. 637 (Ex. 1584):[5] one looks to the

---

[4]Likewise, *Morely Bros. v. Clark*, 139 Mich. App. 193, 194, 361 N.W.2d 763, 764 (1984) furnishes no guidance because in that case the "dissenters" would have had their interest in the corporation reduced from 100 percent to 19.9 percent. Nor is *Watson v. Washington Preferred Life Ins. Co.*, 81 Wn.2d 403, 502 P.2d 1016 (1972) relevant. The court held that former RCW 23A.08.305 was unconstitutional because it failed to provide adequate notice to the shareholders that failure to attend a shareholders' meeting would result in a court appointed representative exercising the shareholders' rights.

Nor does Fletcher offer any guidance on these facts. Although reorganizations are discussed in detail, Fletcher notes the purpose of reorganizations is to continue a corporation which is in financial difficulties. 15 W. Fletcher, *Private Corporations* § 7201 (rev. perm. ed. 1990). Reincorporations are similar, but are undertaken "to correct errors or defects in the original incorporation, or to enlarge the powers or limit the liabilities of the corporation, or to lengthen or revive the corporate life." (Footnote omitted.) 15 W. Fletcher § 7204.

[5]"And it was resolved by them, that for the sure and true interpretation of all statutes in general (be they penal or beneficial, restrictive or enlarging of the common law,) four things are to be discerned and considered:

"1st. What was the common law before the making of the Act.

"2nd. What was the mischief and defect for which the common law did not provide.

"3rd. What remedy the Parliament hath resolved and appointed to cure the disease of the commonwealth.

"And, 4th. The true reason of the remedy; and then the office of all the Judges is always to make sure construction as shall suppress the mischief, and advance the remedy, and to suppress subtle inventions and evasions for continuance of the mischief, and *pro privato commodo*, and to add force and life to the cure and

mischief or defect for which the existing law does not provide, and at the remedy that the Legislature has provided, and so construe the statute to suppress the mischief. The mischief and the remedy here involved are summarized in *Voeller v. Nielston Warehouse Co.*, 311 U.S. 531, 535 n.6, 85 L. Ed. 322, 61 S. Ct. 376 (1940):

> At common law, unanimous shareholder consent was a prerequisite to fundamental changes in the corporation. This made it possible for an arbitrary minority to establish a nuisance value for its shares by refusal to cooperate. To meet the situation, legislatures authorized the making of changes by majority vote. This, however, opened the door to victimization of the minority. To solve the dilemma, statutes permitting a dissenting minority to recover the appraised value of its shares, were widely adopted.

As noted by Fletcher, the reason for dissenters' rights statutes granting appraisal rights, such as RCW 23B.13, is:

> [A]n appraisal is the method of paying shareholders for taking their property; it is the statutory means whereby shareholders can avoid the conversion of their property into other property not of their choosing and is given to shareholders as compensation for the abrogation of the common-law rule that a single shareholder could block a merger. The purpose of these statutes is to protect the property rights of dissenting shareholders from actions by majority shareholders which alter the character of their investment.

(Footnotes omitted.) 12B W. Fletcher *Private Corporations* § 5906.10 (rev. perm. ed. 1990).

Here, there was no change in the basic business. The change is merely that the business will be carried on under the corporate law of a different jurisdiction. To show that this change is of significance and deserves the protection of RCW 23B.13.020, the dissenters have made a detailed comparison of the Delaware corporation act and the Washington corporation act and enumerated some minor differences.[6] In this case the majority holds more than two-thirds of the

---

remedy, according to the true intent of the makers of the Act, *pro bono publico*." (Footnotes omitted.) 76 Eng. Rep. at 637.

[6] See appendix. The differences are not challenged by CPNA.

voting stock of CPNW. Most of the statutory differences could be eliminated by amending the articles and bylaws of the Washington corporation to more closely track the provisions of the Delaware statute. Obviously this substantially undermines the claim that a change in the state of incorporation will have any real significance to the dissenters.

■ Discussing the problem of balancing majority and minority rights as being one of whether a change was fundamental or auxiliary in nature, the court in *Mower v. Staples*, 32 Minn. 284, 286, 20 N.W. 225, 226 (1884) stated as follows:

> Alterations which materially change the nature and purposes of the corporation, or of the enterprise for the prosecution of which it was created, are *fundamental*, while those which work no such material change are not fundamental.

The court contrasted such fundamental changes with what it labeled auxiliary changes and stated:

> alterations, or, as they are sometimes called, amendments, which do not change the nature, purpose, or character of a corporation or its enterprise, but which are designed to enable the corporation to conduct its authorized business with greater facility, more beneficially, or more wisely, are *auxiliary* to the original object, and that, therefore, when one becomes a stockholder, he impliedly assents that such alteration or amendment may be made.

32 Minn. at 286-87. Plainly, under this test the change of domicile would be "auxiliary" and the shareholder would have no right to object. We find this distinction helpful in deciding what changes trigger dissenters' rights under our specific statute.

■ More importantly, and in our view decisively, neither in their brief, nor at oral argument, were the dissenters able to identify how any of the enumerated differences would actually change their rights to control or participate in the corporation or to permit any actions adverse to their financial interest which are not permitted under Washington law.

On these facts, it appears the dissenters are attempting to raise a theoretical claim of damage to force a buyout of shares they no longer want to hold. The corporation claims it

is not in a position to buy out the shares. If we allowed dissenters' rights to be exercised in these circumstances, we would be allowing the minority shareholders to frustrate an action advantageous to the corporation as a whole which does not adversely affect the interests which RCW 23B.13-.020 was intended to protect.

■■ The officers and directors of a Washington corporation have broad powers to manage the affairs of the corporation, to buy and sell assets, and do business in other states. We find no reason to deny the directors, with the authorization of two-thirds of the shareholders, to choose the state of corporate domicile. Administrative convenience, taxation, corporate authority, and other considerations may make such a change advantageous to the corporation. The courts should not unnecessarily interfere with corporate management nor enable a minority to frustrate corporate action taken in good faith which does not result in any harm to the minority.

The Legislature has enumerated certain specific corporate actions that would trigger dissenters' rights.[7] The unifying feature of all of such actions is that the action will result in a significant difference in the nature and scope of the business enterprise, or a significant change in the shareholders' rights in such enterprise. While "merger" is listed as one of the triggering events, in this case there may be a merger as a matter of form but not as a matter of substance. CPNW, a Washington corporation, is being "merged" into the hollow shell of CPNA, a Delaware corporation, which was created for the sole purpose of changing corporate domicile. There is no change in assets or liabilities, there is no change in the management, personnel or nature of the business, and there is no significant change in corporate structure or the rights of shareholders. As they should, courts look to the substance

---

[7] RCW 23B.13.020(1) mandates dissenters' rights for the corporate actions of merger, share exchange, sale, amendments to the articles of incorporation which reduce ownership share, and any other corporate action for which dissenters' rights are provided in the articles of incorporation.

and not merely the form.[8] We conclude that although the legal mechanism the corporation proposes to achieve the change of corporate domicile may be a "merger", it does not constitute a "merger" in the business sense of the term, nor within the meaning of the statute, and so does not trigger dissenters' rights.

Reversed and remanded with instructions to enter judgment in favor of CPNA.

## APPENDIX

The dissenters assert the following differences between Washington and Delaware corporate laws as relevant:[9]

1. Under Delaware law, a merger, consolidation, sale of substantially all assets other than in the regular course of business or dissolution of a corporation must be approved by a majority vote of the outstanding shares entitled to vote.

In Washington, such transactions must be approved by the affirmative vote of two-thirds of the outstanding shares entitled to vote, unless the corporation provides in its articles of incorporation that the required vote may be reduced to not less than a majority of all shares entitled to vote.

2. Under Washington law, with certain exceptions, any merger, share exchange, sale of substantially all of a corporation's assets other than in the regular course of business, or dissolution of corporation involving an "interested shareholder", must be approved by the affirmative vote of two-thirds of all outstanding shares entitled to vote. An "interested shareholder" is an individual or affiliated group owning beneficially 20 percent or more of the outstanding voting shares of a corporation.

Delaware has no similar statutory provision.

3. In Washington, a "target corporation" is prohibited from engaging in significant business transactions for 5 years after the date a person becomes an "acquiring person" by "beneficially owing 10 percent or more of the voting shares of the target corporation", unless the transaction or acquisition of shares was approved by a majority of the board of directors.

---

[8]*Cinocca v. Baxter Labs., Inc.*, 400 F. Supp. 527 (E.D. Okla. 1975); *Whitaker v. Spiegel, Inc.*, 95 Wn.2d 661, 669, 623 P.2d 1147, 637 P.2d 235 (1981); *Gordon v. Cummings*, 78 Wash. 515, 521, 139 P. 489 (1914) (courts must look to substance over form because to do otherwise "would meet the letter of the law but blast its spirit.").

[9]We make no claim as to the accuracy of these statements, but merely present the differences the dissenters assert are present and relevant.

Delaware has a similar statute, but defines an "interested share-holder" as an individual or affiliated group owning 15 percent or more of the outstanding voting stock of the corporation and prohibits such action for a period of 3 years.

4. Delaware law allows the board of directors to declare dividends out of net profits.

Under Washington law, a distribution can be made unless the distribution would result in the corporation being unable to pay its debts as they become due, or the corporation's total assets would be less than the total sum of its liabilities plus the amount that would be needed to satisfy shareholders' preferential rights for the corporation in liquidation.

5. Washington law provides that holders of 10 percent of outstanding stock may call a special meeting of the shareholders.

Under Delaware law, a special meeting of the shareholders may only be called by the board of directors unless otherwise provided in the certificate of incorporation or bylaws.

6. Delaware law provides that the corporation is not required to pay dissenting shareholders the appraised value of the shares following a merger or consolidation where the shares are either listed on the national securities exchange or are held of record by at least 2,000 shareholders.

Washington does not so restrict the circumstances in which dissenting shareholders are paid the appraised value.

7. Under Washington law, a director, or the entire board of directors, may be removed by shareholders with or without cause, unless the articles of incorporation provide otherwise.

In Delaware, directors may be removed by the shareholders with or without cause. Cause must be shown for classified board unless certificate of incorporation provides otherwise.

8. Under Delaware law, a corporation may make loans or guarantee obligations of directors without a shareholder vote, if in the judgment of the directors, such loan or guaranty may reasonably be expected to benefit the corporation.

In Washington, such transactions require either a determination and subsequent approval by the board of directors that the loan or guaranty benefits the corporation, or a majority vote of the shareholders (not counting shares owned by the benefited director).

9. Under Washington law, shareholders may take action without a meeting only upon unanimous written consent.

Under Delaware law, shareholders may take action by written consent if agreed upon by the number of votes necessary to authorize or take such action at a properly called meeting.

WEBSTER, C.J., and PEKELIS, J., concur.