25 F.3d 1058
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 THRIFTY RENT-A-CAR SYSTEM, INC., Plaintiff-Appellant,
v.
Thomas A. TOYE; Salient Group, Inc.; Hefflefinger, Inc.,
Defendants-Appellees.
 Nos. 93-5183, 93-5205.
 United States Court of Appeals, Tenth Circuit.
 April 19, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before BRORBY and EBEL, Circuit Judges, and KANE,** District Judge.
 
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The cases are therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff-appellant Thrifty Rent-A-Car System, Inc., appeals the district court's grant of summary judgment in favor of defendants Thomas A. Toye, Salient Group, Inc., and Hefflefinger, Inc., (defendants) on Thrifty's claims for breach of contract or, in the alternative, for reformation or relief based on the theory of unjust enrichment. Thrifty further contests the district court's award of attorney fees to defendants. Because we agree with the district court that, under the agreement at issue, Thrifty unambiguously assumed the disputed liabilities, and because defendants are eligible for an award of attorney fees under 12 Okla. Stat. Ann. tit. 12, 936, we affirm.
 
 
 4
 Thrifty is engaged in the business of licensing persons to operate Thrifty vehicle rental businesses. Defendants were licensees of Thrifty, operating franchises in Florida and Maine.[2] By November of 1989, defendants were past due in their obligations to Thrifty, owed third parties almost $3 million on vehicle purchase and lease obligations, and had numerous other trade debts. Most of this debt was personally guaranteed by defendant Toye.
 
 
 5
 Apparently the largest portion of defendants' debt was their obligation to Chrysler Credit for approximately $2.6 million. Part of that amount, some $492,000, represented "vehicle shortfall" amounts. A shortfall arises when a used rental vehicle is sold but the sale proceeds fail to cover the existing indebtedness. According to Thrifty, defendants could have avoided the risk of shortfalls had they chosen to participate in Thrifty's vehicle leasing programs, under which they could simply return used vehicles to Thrifty when they were finished with them. Instead, defendants either leased from other sources or bought vehicles outright from Chrysler. Because they chose the latter course, defendants were liable for the shortfalls on the sale of used vehicles.
 
 
 6
 In January 1990, the parties entered into the agreement which is the subject of this appeal. In that agreement, defendants agreed to convey to Thrifty their rights to conduct business as Thrifty licensees in Florida, along with certain vehicles, customer rental agreements, contracts with suppliers, and other assets. In return, Thrifty paid defendants $750,000[3] and agreed to assume certain obligations. The extent of the liabilities so assumed is at the heart of this dispute.
 
 
 7
 Our review of the district court's grant of summary judgment is de novo. Oklahoma Radio Assocs. v. FDIC, 987 F.2d 685, 690 (10th Cir.1993). In so doing, we apply the same standard employed by the trial court under Fed.R.Civ.P. 56(c). Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). Thus, the grant of summary judgment will be affirmed if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ. P. 56(c).
 
 
 8
 The agreement provides that it is to be construed in accordance with the laws of Oklahoma.
 
 
 9
 In Oklahoma, the interpretation of a contract is governed by a comprehensive statutory scheme. See Okla. Stat. Ann. tit. 15, 151-177.... The mutual intention of the parties at the time of contracting governs the interpretation of a contract. In determining the intention of the parties, the express language of a contract controls if it is unambiguous on the face and there exists no fraud, accident, or pure absurdity. Hence, when a contract is written, the intention of the parties must be determined from the writing alone, if possible. In the presence of an ambiguity, however, extrinsic evidence may be admitted to determine the parties' intent at the time they entered into the contract. A court is without authority to admit extrinsic evidence unless the contract terms are ambiguous.
 
 
 10
 Devine v. Ladd Petroleum Corp., 743 F.2d 745, 748 (10th Cir.1984), aff'd on reh'g on other grounds, 805 F.2d 348 (1986) (citations omitted). "A contract is ambiguous when and only when it is reasonably and fairly susceptible of different constructions or meanings." Cinocca v. Baxter Labs., Inc., 400 F.Supp. 527, 532 (E.D. Okla.1975). The fact that the parties disagree about the meaning of a contract does not make it ambiguous.
 
 
 11
 The existence of ambiguity in a contract is a question of law for the court. See id. If no ambiguity exists, the construction and interpretation of a contract is also a question of law. See id. The district court concluded that the contract was unambiguous and that Thrifty had assumed the liabilities in dispute. The court further determined that the integration clause of paragraph 14(b) precluded any evidence of prior understandings between the parties which would alter the terms of the agreement.
 
 
 12
 Thrifty argues that the district court improperly selected one particular clause from the entire contract and focused on that language while ignoring the import of the contract as a whole. In construing a contract, a reviewing court must seek to ascertain the intent of the parties at the time the contract was formed. Humphreys v. Amerada Hess Corp., 487 F.2d 800, 802 (10th Cir.1973). In so doing, the intention of the parties must be deduced from the contract as a whole; an attempt should be made to give effect to every provision of the agreement. Greenberg v. Service Business Forms Indus., Inc., 882 F.2d 1538, 1540 (10th Cir.1989), cert. denied, 493 U.S. 1045 (1990). The court should not focus on a particular clause or take language out of context. Shawnee Hosp. Auth. v. Dow Constr., Inc., 812 P.2d 1351, 1353 (Okla.1990); see also Okla. Stat. Ann. tit. 15, 157.
 
 
 13
 If a contract is complete in itself and is unambiguous when viewed in its entirety, "its language is the only legitimate evidence of what the parties intended." Founders Bank & Trust Co. v. Upsher, 830 P.2d 1355, 1362 (Okla.1992) (emphasis omitted); Ollie v. Rainbolt, 669 P.2d 275, 279 (Okla.1983). "The intention of the parties cannot be determined from the surrounding circumstances, but must be gathered solely from the words used." Id.
 
 
 14
 We begin with an overview of Thrifty's general position. It maintains that the purpose of the agreement was an effort to help a long time Thrifty franchisee "avoid bankruptcy so he could sell his Florida real estate at market price and use the sale proceeds to pay his debts." Appellant's Br. at 8. Thus, the entire agreement was an effort to help Toye resolve his financial difficulties. Indeed, according to Thrifty, "the parties intended the Agreement to be a 'bridge' enabling Toye to sell his Florida real estate at market value and thereafter to repay Thrifty from the proceeds of that sale the amounts paid by Thrifty to Toye's creditors related to Toye's operation of the Florida Franchise." Id. at 34. Thrifty insists that it never was the parties' intent to burden Thrifty with responsibility for liabilities incurred in the operation of the Florida franchise before the effective date of the agreement. In fact, Thrifty maintains that when the Orlando property sold, the parties intended that Toye repay to Thrifty the pre-effective date obligations it had paid on Toye's behalf. Defendants, to the contrary, argue that the agreement clearly obligates Thrifty for all of the liabilities at issue here.
 
 
 15
 The amounts in dispute break down into four basic categories, and all relate to vehicles used in connection with the Florida franchise before the effective date of the agreement. Those amounts include:
 
 
 16
 1) Vehicle shortfalls;
 
 
 17
 2) Interest on those shortfalls as well as other interest paid by Thrifty;
 
 
 18
 3) Vehicle lease and debt obligations, past due as of the effective date of the agreement; and
 
 
 19
 4) Late charges and interest on those past due vehicle lease and debt obligations.
 
 
 20
 Thrifty argues that the district court's interpretation of the agreement creates inconsistencies among many of its provisions, and that the agreement only makes sense if Thrifty's obligation is limited to those liabilities arising from the operation of the Florida franchise which arose after the effective date of the agreement.
 
 
 21
 Paragraph 2 of the agreement provides in relevant part:
 
 
 22
 Assumption of Obligation by Buyer. Subject to consummation of the transactions contemplated by this Agreement, Buyer agrees to assume the following obligations and liabilities of Salient with respect to the Franchise as of the Effective Date:
 
 
 23
 (a) the liabilities listed on Exhibit C to this Agreement to the extent of the principal and accrued interest amounts noted thereon;
 
 
 24
 Appellant's App. at 44. Exhibit C consists entirely of the following:
 
 
 25
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 TABLE
 
 26
 Id. at 61. The district court held that this Exhibit C included the shortfall amounts in dispute, that it more specifically controlled the hold harmless provisions of paragraph 10(a), and that it, and not paragraph 5(a), controlled past due vehicle lease payments. Id. at 289. Thrifty contends that the district court focused too narrowly on paragraph 2(a) and Exhibit C and thus misconstrued the agreement.
 
 
 27
 Thrifty begins by arguing that the district court did not reconcile the two indemnity clauses, paragraphs 10(a) and 10(b).
 
 The agreement provides:
 
 28
 10. Indemnification and Release.
 
 
 29
 (a) [Defendants] shall indemnify and hold Buyer [Thrifty], its subsidiaries, shareholders, officers, directors, agents, employees, representatives, successors, and assigns harmless from and against any and all claims, proceedings, demands, actions, liabilities, losses, costs or expenses (including, without limitation, reasonable attorney's fees and court costs), whenever and whether or not litigation proceedings are instituted, arising directly or indirectly out of the operation of the Florida Franchise or the Maine Franchise prior to the Effective Date.
 
 
 30
 (b) As to all Liabilities specifically assumed by Buyer [Thrifty] pursuant to the terms hereof and pursuant to the terms of the Assignment and Assumption Agreement in form satisfactory to Seller [defendants], Buyer [Thrifty] hereby promises to indemnify, hold harmless and defend [defendants] from and against any and all liability, loss or claims arising against Salient, HF and Toye out of liabilities specifically assumed. This indemnity, promise to hold harmless and defend shall extend to Toye's personal guaranty of any of the specifically assumed liabilities.
 
 
 31
 Appellant's App. at 54-55. Thrifty maintains these provisions clearly show that defendants are responsible for the disputed liabilities because, when read together, the paragraphs define what liabilities Thrifty did not assume, i.e., those "arising directly or indirectly out of the operation of the Florida Franchise prior to the Effective Date." We agree with the district court, however, that the plain meaning of paragraph 10(a), when read in conjunction with paragraph 2(a), Exhibit C, and paragraph 10(b), is that defendants have indemnified Thrifty for all liabilities arising out of the operation of the Florida franchise before the effective date except for the liabilities specifically assumed under the agreement by Thrifty. Those latter liabilities are the ones specified in Exhibit C. Under this reading, paragraph 10(b) then indemnifies defendants for the liabilities Thrifty has assumed. Specific references in contracts control the meaning of more general terms. Occidental Life Ins. Co. v. Marmaduke Corbyn Agency, 187 F.2d 553, 555 (10th Cir.1951).
 
 
 32
 Thrifty maintains that this interpretation fails to give effect to recital B. Recital B provides that the transaction is subject to the terms and conditions of the Agreement and, Thrifty argues, that paragraph 10(a) providing for defendants' indemnification is one of those terms. This argument, of course, begs the question. The issue here for the court to decide is just what the terms and conditions of the agreement are. Identifying Recital B as a source of inconsistency because it refers to "terms and conditions" resolves nothing.
 
 
 33
 Thrifty next argues that defendants are responsible for the pre-effective date shortfalls and that the assumption of defendants' obligations was not unqualified. All of the vehicles involved in this transaction are listed on Exhibit A to the agreement. Paragraph 1(c) provides that defendants will sell "pursuant to the terms of Section 5 of this Agreement, all vehicles used by Salient in connection with the Florida Franchisees (sic) listed on Exhibit A ... as of the Effective Date." Appellant's App. at 44. We thus must determine what effect paragraph 5 has, if any, with regard to shortfalls. Paragraph 5(a) provides in pertinent part:
 
 
 34
 Vehicle Leases and Incentive Payments. Buyer shall assume Salient's obligations under the Vehicle Lease Agreements attached as Exhibit F to this Agreement for all vehicles owned or used by Salient in connection with the Florida Franchise.... It is the intention of the parties that, subject to this Section 5, Buyer shall accept and shall become responsible for all vehicles (the "Vehicles") used by Salient in connection with the Florida Franchise as of the Effective Date. Salient shall be responsible for all costs accruing due to such Vehicles including, but not limited to, costs of repair of damages to the Vehicles, which damage occurred prior to the Effective Date ... Buyer shall be responsible for damages to the Vehicles occurring as of or after the Effective Date.
 
 
 35
 Id. at 48. The balance of the paragraph provides that certain charges and incentives will be prorated between the parties as of the effective date.
 
 
 36
 The district court held that vehicle shortfalls were not the "costs" denoted in paragraph 5(a), but were instead subsumed and controlled by paragraph 2(a) and Exhibit C which specifically assigned liability to Thrifty for the approximately $2.6 million Chrysler debt. The parties have stipulated that the vehicle shortfall amount at issue is part of the approximately $2.6 million debt to Chrysler referenced on Exhibit C. Id. at 293. We agree with the district court that, because the shortfall amount was included in the $2.6 million, paragraph 2(a) and Exhibit C more specifically control liability, and that such liability was unambiguously assumed by Thrifty as part of paragraph 2(a). A contrary interpretation would make the inclusion of the $492,000 shortfall amount in with the Chrysler debt on Exhibit C inconsistent. Under that construction, paragraph 2(a) and Exhibit C would obligate Thrifty for the shortfall and paragraph 5(a) would similarly obligate defendants. The district court correctly avoided such inconsistency in its resolution of this question.
 
 
 37
 Thrifty next argues that this reading ignores paragraph 5(e) of the agreement. That paragraph provides:
 
 
 38
 (e) Auction Return Charges. Salient shall be responsible and debited for any losses incurred or paid by Buyer under the Liabilities assumed hereunder on any Vehicles which are returned to Buyer from auction due to violation of program rules prior to the Effective Date, undetected damage which occurred prior to the Effective Date or any other reason including shortfalls on the sale of any Vehicles for which buyer has assumed any obligation hereunder whether such Vehicles were returned for disposal before or after the Effective Date. The amount of any such loss paid or required to be paid by Buyer shall be a credit to Buyer. Such losses shall include but not be limited to, the costs incurred in return and sale of the vehicle.
 
 
 39
 Id. at 49-50. Thrifty argues that this provision clearly makes defendants liable for shortfall amounts. We disagree. This provision only requires defendants to cover shortfall amounts on vehicles returned from auction for various reasons. Mr. Toye has stipulated that he was liable for approximately $211,000 under this paragraph and that he agreed to a setoff of that amount. This paragraph does not change the nature of the $492,000 shortfall from its status as preexisting debt to Chrysler which was assumed via paragraph 2(a) and Exhibit C. The $492,000 shortfall is a liquidated debt which is distinct from later shortfall amounts arising as vehicles were involved in the auction process.
 
 
 40
 Thrifty next argues that it did not assume liability for post-effective date interest on vehicle shortfalls and post-effective date late charges on past due vehicle lease payments. We disagree. Because Thrifty assumed liability for the vehicle shortfalls, it implicitly also assumed liability for future interest charges on those amounts. Any other interpretation would be contrary to standard business practice and would need to have been spelled out in the contract.
 
 
 41
 The same reasoning applies to Thrifty's assumption of the Winterpark lease obligation which, the parties have stipulated, included assumption of the debt on vehicles used in connection with the operation of the Florida franchise before the effective date. Id. at 293. That assumption necessarily included the late charges which eventually grew out of the assumed debt. As for the remaining interest and late charges, those amounts are either attributable to interest on a large portion of the debt to Chrysler, see id., or to late charges on the lease payments for vehicles included in the Winterpark debt and the People's Heritage debt. Id. at 294. We agree with the district court that the specific assumption by Thrifty of these obligations under paragraph 2(a) and Exhibit C controls over the general "cost" language of paragraph 5(a).
 
 
 42
 Thrifty's next argument is that it is not responsible for pre-effective date past due lease payments. Thrifty contends that the resolution of this question turns on the meaning of the following sentence: "It is the intention of the parties that subject to this Section 5, Buyer shall accept and shall become responsible for all vehicles (the "Vehicles") used by Salient in connection with the Florida Franchise as of the Effective Date." Id. at 48. Thrifty argues this sentence should be read so that the phrase "as of the Effective Date" modifies "responsible." Defendants counter that "as of the Effective Date" modifies "used." We read the sentence as capable of both interpretations: Thrifty assumed responsibility as of the effective date for all vehicles used by defendants as of the effective date. That responsibility included past due lease payments, charges, interest, shortfalls, etc.
 
 
 43
 Because paragraph 2(a) and Exhibit C are more specific regarding assumption of liability than is paragraph 5(a), this interpretation remains consistent with the interpretation of paragraph 10(a) as described above. Contrary to Thrifty's contention, we also view this reading of paragraph 5(c) as more consistent with paragraph 1(c)'s reference to all the vehicles listed on Exhibit A as being "all vehicles used by Salient in connection with the Florida Franchisees [sic]." Id. at 44. Regarding the other arguable inconsistencies identified by Thrifty, as yet undelivered vehicles and vehicles returned for disposal can still be "used" in the rental business. It is obvious from this dispute that ordering vehicles and disposing of them was a large part of defendants' business. Finally, the balance of paragraph 5(a) demonstrates that Thrifty knew how to define various charges, provide for their proration, and tie them to the effective date. Had it been the parties' intention, Thrifty could have done the same careful drafting with respect to the amounts here in dispute. These past due lease payments were included in the Winterpark lease obligation, the Mitsubishi lease obligation, and the People's Heritage obligation, all of which were specifically assumed by Thrifty pursuant to paragraph 2(a) and Exhibit C.
 
 
 44
 After arguing that the contract is unambiguous, Thrifty then urges this court to find error in the district court's refusal to consider extrinsic evidence as an aid to interpreting this agreement. There are several problems with this proposition. While we agree with Thrifty that extrinsic evidence can be used to establish the context of a contract, including the circumstances surrounding it, First Nat'l Bank in Dallas v. Rozelle, 493 F.2d 1196, 1201 (10th Cir.1974); Evensen v. Pubco Petroleum Corp., 274 F.2d 866, 871 (10th Cir.1960), statements regarding the intent of the parties cannot be admitted when they vary, modify, or contradict a written agreement without running afoul of the parol evidence rule. See Rozelle, 493 F.2d at 1201 (evidence regarding the subjective intent of either party in making a written contract may not be considered). In Ollie, 669 P.2d at 279, the Oklahoma Supreme Court noted that "[w]here a contract is complete in itself and, as viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended. The intention of the parties cannot be determined from the surrounding circumstances, but must be gathered solely from the words used." We agree with the district court that this agreement is unambiguous, and we find no error in that court's refusal to consider parol evidence.
 
 
 45
 Thrifty argues that its evidence would not vary, modify, or contradict the terms of this agreement. It argues that the evidence would prove the parties here intended their transaction to be simply a "bridge" transaction, entered into only to enable Mr. Toye to sell his Florida real estate and repay Thrifty from the proceeds. We think, however, that this evidence would result in a drastic modification of the clear terms of this agreement and thus is barred by the parol evidence rule.
 
 
 46
 In addition to the general law regarding parol evidence, Thrifty is faced with the existence of an integration clause in the agreement. Paragraph 14(b) provides that the agreement constitutes the entire agreement between the parties and supersedes all prior agreements, communications, letters, conversations, and understandings between them. Appellant's App. at 56. Because we have determined the agreement to be unambiguous, this integration clause is a further bar to the extrinsic evidence suggested by Thrifty. See Baum v. Great W. Cities, Inc., 703 F.2d 1197, 1206 (10th Cir.1983). In Blackledge v. Allison, 431 U.S. 63 (1977), the Supreme Court noted that integration clauses carry "great weight, but ... can be set aside by a court on the grounds of fraud, mistake, duress, 'or on some ground that is sufficient for setting aside other contracts.' " Id. at 75 n. 6 (citation omitted). We find none of those grounds present here.
 
 
 47
 Thrifty also argues that the agreement here should be reformed to reflect the intention of the parties. The theory of reformation, however, requires a plaintiff to show:
 
 
 48
 (a) some antecedent agreement to the terms of which the instrument should be reformed, (b) mutual mistake or mistake on part of one and fraud or inequitable conduct on part of the other, as a result of which the instrument reflects something neither party had intended and (c) proof of these elements by clear and convincing evidence.
 
 
 49
 Cleary Petroleum Corp. v. Harrison, 621 P.2d 528, 533 (Okla.1980) (footnote and emphasis omitted). Thrifty here has failed to raise a genuine issue of material fact as to mutual mistake or fraud on the part of the defendants which would preclude summary judgment on this claim.
 
 
 50
 Thrifty's unjust enrichment claim fails for the same reason. "Under Oklahoma law, a party may only recover under this theory by showing 'enrichment to another coupled with a resulting injustice.' " County Line Inv. Co. v. Tinney, 933 F.2d 1508, 1518 (10th Cir.1991) (quoting Teel v. Public Serv. Co., 767 P.2d 391, 398 (Okla.1985)). We fail to see any injustice in requiring Thrifty to adhere to the terms of an unambiguous contract which it drafted. Thrifty's complaint that this result will allow defendants to reap what it considers an unfair profit is not the kind of injustice envisioned by the law of unjust enrichment. "The law will not make a better contract than the parties themselves have seen fit to enter into, or alter it for the benefit of one party to the detriment of another." King-Stevenson Gas & Oil Co. v. Texam Oil Corp., 466 P.2d 950, 954 (Okla.1970).
 
 
 51
 The last issue raised by this appeal is the propriety of the district court's award of attorney fees to defendants. We review the award of attorney fees for abuse of discretion. Smith v. Freeman, 921 F.2d 1120, 1122 (10th Cir.1990). When that award is based on a statute, however, the district court's statutory interpretation or legal analysis is reviewed de novo. Homeward Bound, Inc. v. Hissom Memorial Ctr., 963 F.2d 1352, 1355 (10th Cir.1992).
 
 
 52
 The district court based its award on Okla. Stat. Ann. tit.12, 936 which allows attorney fees to the prevailing party in any civil action to recover on a contract relating to the purchase or sale of goods.[4] Thrifty contends this statute does not apply because the primary object of the underlying agreement was "the acquisition of 'rights to conduct business,' and 'all agreements, contracts and other arrangements relating to the Florida Franchise.' " Appellant's Br. at 42. Thrifty argues that any transfer of vehicles which occurred pursuant to the agreement was collateral to the main purpose of the transaction, making the fee statute inapplicable.
 
 
 53
 Initially, we note that the statute refers to all actions on contracts relating to the sale of goods. It is not limited to those contracts where the sale of goods is primary. We have found no Oklahoma case which involved the sale of goods but where the court denied fees because the sale of goods portion of the transaction was too tangential to the primary purpose of the agreement. Sevelin v. Van Meter, 746 P.2d 207 (Okla. Ct.App.1987), cited by Thrifty, is not to the contrary. In Sevelin, fees were improperly awarded because the gravamen of the plaintiff's complaint was outside the purview of the statute and because there was no other aspect to the suit which would bring it under 936. Plaintiffs there were not seeking to recover on a contract relating to the sale of goods or for labor or services performed. Here, a substantial part of the underlying transaction "relates" to the sale of the vehicles.
 
 
 54
 The district court cited Crown Paint Co. v. Bankston, 640 P.2d 948 (Okla.1981), cert. denied, 455 U.S. 946 (1982), as authority for its award of fees. In that case, the plaintiff had sued its dealer on an open account. The dealer/defendant counterclaimed for breach of a contract not to compete. The Oklahoma Supreme Court upheld defendant's award of fees for his successful counterclaim, holding that the suit was one relating to the sale of goods. Id. at 952. We see no distinction between Crown Paint and this case.
 
 
 55
 The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 **
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [2]
 This dispute concerns only the operations and agreement relative to the Florida franchise
 
 
 [3]
 Of this amount, $500,000 was applied to cancel defendant's outstanding debt to Thrifty; $250,000 was held back pending certain adjustments, primarily relating to vehicles. Appellant's Br. at 8
 
 
 [4]
 Okla. Stat. Ann. tit. 12, 936 provides:
 In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.